IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

LORNE LEE CLARK,                              )
Institutional ID No. 05713738,               )
                                             )
              Plaintiff,                     )
                                             )    CIVIL ACTION NO. 5:17-CV-228-M-BQ
v.                                           )
                                             )
SUZAN RIVAS, *et al.*                        )
                                             )
              Defendants.                    )

## FINDINGS, CONCLUSIONS, AND
## RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b) and Special Order No. 3-251, this case was automatically referred to the undersigned United States Magistrate Judge for further proceedings. For the reasons set forth below, the undersigned recommends that the claims in this action be dismissed under 28 U.S.C. § 1915(e)(2)(B).

### I.    Procedural History and Background

Pro se Plaintiff Lorne Lee Clark filed this action under 42 U.S.C. § 1983 on September 29, 2017, along with an application to proceed *in forma pauperis* (IFP). ECF Nos. 1, 2. After reviewing Clark's initial request to proceed IFP (ECF No. 2), the court ordered Clark to produce additional information in support of his IFP request, prior to the court ruling on his motion. *See* ECF No. 6. In response, Clark submitted a second application to proceed IFP, along with other supporting documentation. ECF No. 7. Based on the information provided, the court subsequently granted Clark's motion to proceed IFP. ECF No. 9.

Clark was tried and civilly adjudged to be a sexually violent predator (SVP), as defined by Texas Health & Safety Code § 841.003. Upon his release from the Texas Department of Criminal

1

Justice (TDCJ) after completing his criminal sentence, the 435th Judicial District Court of Montgomery County, Texas, committed Clark to outpatient treatment and community supervision. The State of Texas subsequently transferred Clark to the Bill Clayton Detention Center in Littlefield, Texas,[1] where he remains confined for inpatient treatment in accordance with the provisions of Texas Health & Safety Code § 841.081.

Clark is confined pursuant to an order of civil commitment; therefore, he is not considered a "prisoner" within the meaning of 28 U.S.C. § 1915(h) and is not subject to the screening procedures of 28 U.S.C. § 1915A. *See Bohannan v. Doe*, 527 F. App'x 283, 289–90 (5th Cir. 2013) (concluding that a civilly committed SVP was not a prisoner within the meaning of the Prison Litigation Reform Act); *Michau v. Charleston Cty.*, 434 F.3d 725, 727 (4th Cir. 2006) (same); *Allen v. Seiler*, No. 4:12–CV–414–Y, 2013 WL 357614, at *1 n.1 (N.D. Tex. Jan. 30, 2013), *aff'd*, 535 F. App'x 423, 423 (5th Cir. July 12, 2013) (per curiam) (citing *Jackson v. Johnson*, 475 F.3d 261, 266 (5th Cir. 2007)) (same). Because Clark is proceeding IFP, however, he is nevertheless subject to the screening provisions of 28 U.S.C. § 1915(e)(2)(B). Accordingly, the court reviewed Clark's Complaint[2] and entered an order directing Clark to complete a questionnaire in accordance with *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976) to further develop his allegations. Clark timely completed and returned the questionnaire. ECF No. 13.

---

[1] The Bill Clayton Detention Center, also known as the Texas Civil Commitment Center (TCCC), is operated by Correct Care Recovery Solutions, a private company under contract with the Texas Civil Commitment Office (TCCO). *See Texas Civil Commitment Center*, Correct Care Recovery Sols., http://www.correctcarers.com/tccc (last visited June 20, 2018).

[2] Clark titled his Complaint as an "Amended" complaint. *See* Compl., at 1 ("Plaintiff's Amended Pro SE 1983 Civil Rights Complaint Under 42 U.S.C.S. § 1983"). Clark has only filed an original Complaint, however, and has never requested leave of court to file an amended complaint.

## II.   <u>Standard of Review</u>

Section 1915(e) requires a court to dismiss an IFP complaint that fails to state a legally cognizable claim *at any time* if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B)(i)–(iii) (2017); *see Newsome v. E.E.O.C.*, 301 F.3d 227, 231–33 (5th Cir. 2002) (affirming dismissal of pro se, non-prisoner plaintiff's claims as frivolous and for failure to state a claim under § 1915(e)(2)(B)(i) and (ii)).   A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged.  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).   A complaint has no arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories.  *See id.* at 327; *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (citing *Eason v. Holt*, 73 F.3d 600, 602 (5th Cir. 1996)) (noting responses given to a questionnaire are incorporated into the plaintiff's pleadings).

"Under the Federal Rules of Civil Procedure and relevant precedent, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see* Fed. R. Civ. P. 8(a) (providing that to state a claim upon which relief may be granted, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief").   A claim is facially plausible when it asserts facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim.  *Chhim*, 836 F.3d at 469.

And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.,* 296 F.3d 376, 378 (5th Cir. 2002)).

### III.   Discussion

**A.    Clark's Claims**

In his Complaint, Clark names the following Defendants: Suzan Rivas; Tiffany Maybanks; Marsha McLane; Dr. Dehiena; and Dr. Jack.[3]   Compl., at 1.[4]   In his questionnaire responses, however, Clark also names Dr. Chapman (a TCCC doctor) and Chris Greenwald (a TCCO case manager) as additional Defendants. Questionnaire, at 7.   Clark asserts that on May 25, 2017, Dr. Jack prescribed Cymbalta "to assist [him] in coping with the nerve pain," which he alleges also caused him to experience erectile dysfunction (ED).   Compl., at 6; Questionnaire, at 1.   Clark claims that on June 11, 2017, he took a "penile plethysmograph"[5] (PPG) test as part of a statutorily mandated biennial review, and the results were inconclusive—i.e., he did not physically react to visual images or stimuli.   Questionnaire, at 3–4.   Clark attributes the inconclusive results to the ED he allegedly experienced as a result of taking Cymbalta.   Compl., at 6; Questionnaire, at 1–6. Clark believes Dr. Jack knew, or should have known, that Cymbalta would cause him to suffer ED, which in turn would negatively impact his biennial review.   Questionnaire, at 6.

---

[3] The authenticated records show that "Dr. Jack's" legal name is Jack Pieniazek; however, because Clark refers to him as Dr. Jack throughout the Complaint, the court will do the same.

[4] Page citations to Clark's pleadings cite to the electronic page number assigned by the court's electronic filing system.

[5] "Penile plethysmograph testing is a procedure that 'involves placing a pressure-sensitive device around a man's penis, presenting him with an array of sexually stimulating images, and determining his level of sexual attraction by measuring minute changes in his erectile responses.'" *United States v. Weber,* 451 F.3d 552, 554 (9th Cir. 2006) (quoting Jason R. Odeshoo, *Of Penology and Perversity: The Use of Penile Plethysmography on Convicted Child Sex Offenders,* 14 Temp. Pol. & Civ. Rts. L. Rev. 1, 2 (2004)).

Clark also alleges that he hired a personal injury attorney to pursue legal action against "Avalon Inc." in connection with an on-the-job accident, but that Dr. Dehiena, Dr. Chapman, Dr. Jack, and Chris Greenwald prevented him from attending medical appointments scheduled by his attorney.   Compl., at 5; Questionnaire, at 7–8.   Because he was not able to attend those appointments, Clark asserts that his attorney "may" have dropped his case.   *See* Questionnaire, at 7.   Finally, Clark generally alleges that Defendants have not provided him with adequate medical care while at TCCC, and thereby violated his Fourteenth and Eighth Amendment rights.   Compl., at 1, 4–7.   Clark seeks monetary damages and declaratory relief as a result of these alleged constitutional violations.   *Id.* at 7–8.

**B.      Clark has failed to state a non-frivolous claim against Dr. Jack for prescribing Cymbalta.**

Clark alleges that on May 25, 2017, Dr. Jack prescribed Cymbalta for his back and nerve pain, which also caused him to experience ED.  *Id.* at 6.  Clark asserts that as a result of the ED, he received an inconclusive result on his PPG test, thus causing him to receive an adverse determination on his biennial review.[6]  Clark claims that "Dr. Jack knew, or at a very minimal [sic], should have known, that by prescribing Cymbalta to [him]," he would suffer from ED. Questionnaire, at 6.   Clark contends that "Dr. Jack violated [his] Constitutional Rights by prescribing . . . Cymbalta when he knew it would cause [Clark] to acquire an adverse result on a PPG test." *Id.*

---

[6] Texas law provides that an SVP "shall receive a biennial examination."   Tex. Health & Safety Code Ann. § 841.101(a) (West 2015).  TCCO is responsible for contracting with experts to perform the examination, and TCCO provides "a report of the biennial examination to the [state court] judge and to the person.  The report must include consideration of whether to modify a requirement imposed on the person under [applicable law] and whether to release the person from all requirements imposed on the person under [applicable law]." *Id.* § 841.101(b).   Within sixty days of receiving the report, "the judge shall conduct a biennial review of the status of the committed person and issue an order concluding the review or setting a hearing . . . ."  § 841.102(a).

Initially, the court notes Clark's contention that Cymbalta caused him to suffer from ED, which in turn negatively impacted the results of his biennial review in violation of his constitutional rights, is theoretical at best. Specifically, Clark pleads no facts demonstrating he would have been otherwise eligible for an advancement in his tier or housing status, or whether he would have in fact received such a promotion or been released to less restrictive housing, absent the alleged inconclusive test. For this reason alone, Clark has failed to allege a cognizable due process claim. *See generally Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 408 (5th Cir. 1985) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 640 (9th Cir. 1980)) (affirming district court's dismissal of prisoner's claim that the imposition of a $3.00 fee for medical visits violated his First, Fifth, Eighth, and Fourteenth Amendment rights where, even construing his complaint liberally, the prisoner "allege[d] no facts revealing how the $3 fee requirement affected him"); *Thompson v. Fourth Judicial Dist. Court, Ouachita Par.*, Civil Action No. 3:12–cv–1645, 2012 WL 6600338, at *3 (W.D. La. Sept. 25, 2012) (citing *Ashcroft*, 556 U.S. at 679) (explaining that "in order to be afforded the benefits of this assumption [that plaintiff's factual allegations are true] a civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations").

In addition, the documents Clark attached to his questionnaire responses do not show that the experts evaluating Clark's treatment progress through the biennial review considered, at least in any meaningful way, the PPG test results. *See* Questionnaire, at 15 (In the "Biennial Psychological Evaluation and Risk Assessment" conducted by Peter W. Henschel, Ph.D., Dr. Henschel enumerates the "Tests Administered," but he does not include the PPG test. Dr. Henschel did note that Clark's June 2017 PPG "produced a flatline response pattern (none of his responses reached a level of clinical significance)."); 23 (Dr. Henschel opined that "[i]n consideration of all

factors listed above," Clark's "behavioral abnormality has not changed to the extent that he is no longer likely to engage in a predatory act of sexual violence" and recommended that Clark's "civil commitment status remain unchanged . . . ."); 24–25 (In the "Biennial Summary" authored by Ben Johnston, MA, LPC, LSOTP, Johnston referenced the PPG test, noting that Clark "failed to reach clinically significant arousal in any of the domains tested," but also explained that Clark is sometimes "defensive in group [therapy] when he struggles with an assignment, and "needs to continue to gain a better understanding of how his thoughts are connected to his behaviors." Johnston further opined that "Mr. Clark will benefit from continued treatment in a Comprehensive Treatment Program for Men with Sexual Behavioral Problems at The Texas Civil Commitment Center."). Despite Clark's contention that his allegedly inconclusive PPG test results caused him to receive an "adverse determination by the Biennial Evaluator," which "hinders [his] treatment progress, [his] Tier advancement, and eventual release to lesser restrictive housing," the documents Clark provided suggest the PPG test was just one of numerous factors the experts considered in evaluating Clark's status. Indeed, even Clark concedes in his questionnaire responses that the PPG test results provided "the Biennial Evaluator, and others, *in part*, a basis to offer an *unintentional* adversely defective opinion which [was] grossly harmfull [sic] to [him]." *Id.* at 6 (emphasis added). Thus, Clark's own allegations demonstrate the speculative and conclusory nature of his claim. His claim against Dr. Jack should also be dismissed for this reason. *See, e.g., Veasey v. Criminal Dist. Court No. 2*, 272 F. App'x 410, 411 (5th Cir. 2008) (citing *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997)) ("Merely alleging a constitutional violation or making a conclusory allegation [in a § 1983 complaint] is insufficient."); *Baranowski v. Texas*, 998 F.2d 1014, 1993 WL 277139, at *1 (5th Cir. July 16, 1993) (citing *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir.

1992)) ("A court may dismiss as frivolous a § 1983 action supported by only conclusory allegations.").

Even if the court examines the essence of Clark's conclusory allegation, he nevertheless fails to allege sufficient facts demonstrating that Dr. Jack violated his constitutional rights. To the extent Clark's claim may be construed as one alleging a violation of his due process rights under the Fourteenth Amendment, his appropriate remedy is found in state court—not through a federal § 1983 action. Even assuming Clark possesses a liberty interest in his commitment or tier status (which ultimately determines whether he will be released to less restrictive confinement), Clark's procedural due process claim fails because he has not demonstrated that: (1) he utilized the applicable post-deprivation procedure provided under state law; or (2) the available procedure is constitutionally inadequate. Texas law explicitly provides that Clark may, "[w]ithout the [TCCO's] approval . . . file a petition with the [appropriate state] court for transfer to less restrictive housing and supervision. The court shall grant the transfer if the court determines that the transfer is in the best interests of the person and conditions can be imposed that adequately protect the community." Tex. Health & Safety Code Ann. § 841.0834(b). Clark may also file a petition for his release from civil commitment. *See id.* § 841.122 ("On a person's commitment and annually after that commitment, the office shall provide the person with written notice of the person's right to file with the court and without the office's authorization a petition for release.").

Clark does not contend, nor do the records show, that he has filed any petition under the foregoing statutes; as a result, he cannot state a viable Fourteenth Amendment claim due to his failure to avail himself of an available state law remedy or challenge its adequacy. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527, 537–44 (1981)) (explaining that a plaintiff "must either avail himself of the remedies guaranteed by state law or

prove that the available remedies are inadequate"); *Bittick v. Mooney*, 58 F. App'x 664, 664 (8th Cir. 2003) (citing several cases for support) (concluding that the district court properly dismissed prisoner's claim that defendants wrongfully collected child support in excess of the amount provided for in his divorce decree where post-deprivation remedies were available to prisoner and he had not demonstrated such remedies were inadequate); *see also Grant v. Menchaca*, Civil Action No. 2:18-cv-18, 2018 WL 3118391, at *3 (S.D. Tex. Jan. 24, 2018) (noting that plaintiff had not alleged any facts showing "that he properly took advantage of his available tort remedy or that such remedy was inadequate" and thus recommending dismissal of plaintiff's due process claim). "Under Fifth Circuit precedent, a party complaining of a lack of due process is required to utilize available state court remedies before proceeding to court under § 1983." *Hitt v. McLane*, A–17–CV–289–SS, 2018 WL 773992, at *14 (W.D. Tex. Feb. 7, 2018) (citing *Burns v. Harris Cty. Bail Bond Bd.*, 139 F.3d 513, 519 (5th Cir. 1998)); *see also Browning v. City of Odessa*, 990 F.2d 842, 845 n.7 (5th Cir. 1993) (citing several cases for support) (noting that the court "has consistently held that one who fails to take advantage of procedural safeguards available to him cannot later claim that he was denied due process"); *Rathjen v. Litchfield*, 878 F.2d 836, 839 (5th Cir. 1989) (explaining "that no denial of procedural due process occurs where a person has failed to utilize the state procedures available to him"). Because Clark may seek either release or review of his tier status via defined state procedures, his due process claim is meritless and should be dismissed.

To the extent Clark's allegation may be construed as one for deliberate indifference to a serious medical need, his claim also lacks merit. Although Clark is not a prisoner, the Eighth Amendment deliberate indifference standard (typically applicable to prisoners) applies to any claim that Dr. Jack provided constitutionally deficient medical care. *See Bohannan*, 527 F. App'x

9

at 292 (applying Eighth Amendment standard to SVP's claim for deliberate indifference to serious medical needs); *see also Brown v. Dawson*, 8:16CV569, 2018 WL 2120333, at *15 (D. Neb. May 8, 2018) (citing *Mead v. Palmer*, 794 F.3d 932, 936 (8th Cir. 2015)) ("Where a civilly-committed patient's Fourteenth Amendment claim is for constitutionally deficient medical care, the Eighth Circuit applies the deliberate indifference standard from the Eighth Amendment.").

Under the Eighth Amendment, institutional officials have a duty to provide adequate medical care. *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013). A plaintiff seeking to establish an Eighth Amendment violation in regard to medical care must allege facts showing that officials were deliberately indifferent to his serious medical needs. *Morris v. Livingston*, 739 F.3d 740, 747 (5th Cir. 2014) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)) (explaining that because "only the 'unnecessary *and wanton* infliction of pain' implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs" (emphasis in original)). Deliberate indifference "is an 'extremely high' standard to meet" (*Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009)), and requires satisfaction of both an objective and a subjective component. *Rogers*, 709 F.3d at 410. A plaintiff must first prove objective exposure to a substantial risk of serious bodily harm. *Gobert v. Caldwell*, 463 F.3d 339, 345–46 (5th Cir. 2006). As to the subjective component, an official acts with deliberate indifference only where he (1) knows the plaintiff faces a substantial risk of serious harm and (2) disregards that risk by failing to take reasonable measures to abate it. *Id.*; *see also Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (stating prison official is not liable for denial of medical treatment unless he knows of and disregards an excessive risk to inmate health or safety).

An institutional official's "failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to show deliberate indifference." *Domino v. Tex. Dep't of*

*Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)) (alterations and internal quotation marks omitted). "[D]eliberate indifference cannot be inferred merely from negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001). Instead, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brewster*, 587 F.3d at 770 (quoting *Farmer*, 511 U.S. at 837); *see Lawson v. Dall. Cty.*, 286 F.3d 257, 262 (5th Cir. 2002) (holding that deliberate indifference is a "subjective inquiry," and inmate must show prison official was actually aware of risk of harm and consciously ignored it).

Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *Gobert*, 463 F.3d at 346. Similarly, a plaintiff's disagreement with the medical treatment provided does not give rise to a constitutional claim (*Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997)), and a delay in delivering medical care creates constitutional liability only where the alleged deliberate indifference results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). In sum, a plaintiff must demonstrate that staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for any serious medical needs" to state a viable Eighth Amendment claim for deliberate indifference to serious medical needs. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

Here, Clark does not allege facts showing that Dr. Jack intentionally treated him incorrectly or otherwise engaged in conduct rising to the level of a wanton disregard for his serious medical needs. Instead, Clark contends that Dr. Jack "violated [his] Constitutional Rights by prescribing . . . Cymbalta when [Dr. Jack] knew it would cause [Clark] to acquire an adverse result

on a PPG test." Questionnaire, at 6. Stated differently, Clark claims that Dr. Jack should not have prescribed Cymbalta because Dr. Jack knew or should have known it could cause ED. *See id.* at 6–7. Prescribing a medication that causes side effects, however, does not rise to the level of a constitutional violation, absent a further showing of deliberate indifference to serious medical needs. *See Morgan v. Tex. Dep't of Criminal Justice McConnell Unit*, 537 F. App'x 502, 507 (5th Cir. 2013) (affirming dismissal of prisoner's deliberate indifference claim where prisoner did not "allege or point to circumstances that would suggest that [the prison doctor] prescribed the antibiotic cream with knowledge that the cream would pose 'a substantial risk of serious harm,' or that such a risk would have been obvious, and that [the prison doctor] 'disregard[ed] that risk by failing to take reasonable measures to abate it'"); *McQueen v. Leblanc*, Civil Action No. 14-174, 2015 WL 5773901, at *4 (E.D. La. Sept. 30, 2015) (granting summary judgment in favor of prison doctor where prisoner's allegation that doctor continuously prescribed him "laxatives and knowingly expos[ed] [prisoner] to a sufficiently substantial risk of serious damage to his excretory functions" did not sufficiently establish that doctor prescribed the laxatives knowing they would cause serious harm); *see also Dallas v. Stalder*, 73 F. App'x 79, 2003 WL 21756645, at *1 (5th Cir. June 24, 2003) (holding prisoner's claim that "doctors failed to advise him of the side effects of medication, for which he received medical care, is not cognizable under 42 U.S.C. § 1983"). Other than Clark's personal belief that Dr. Jack should have been aware that Cymbalta might cause him to suffer from ED, and thereby adversely impact his PPG test, Clark has alleged no facts showing Dr. Jack prescribed the medication with wanton disregard for Clark's health or his PPG test results. *See* Questionnaire, at 2–3 (conceding he never advised Dr. Jack that he was suffering from ED and acknowledging he still takes Cymbalta); *see also Morgan*, 537 F. App'x at 507 (explaining that prisoner's claim that prison doctor repeatedly prescribed a medication despite its

alleged side effects, and prescribed a cream for non-FDA approved use, "might amount to malpractice" but did not constitute deliberate indifference); *Shafer v. Carmona*, 71 F. App'x 350, 354 (5th Cir. 2003) (quoting *Johnson*, 759 F.2d at 1238) (explaining that deliberate indifference requires facts "clearly evinc[ing] the medical need in question" and showing that defendant had "*sufficient knowledge of the situation* so that the denial of medical care constituted wanton disregard . . ." (emphasis in original)). At best, Clark's claim that Dr. Jack prescribed a medication that causes unwanted side effects may amount to negligence, but "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference . . . ." *Gobert*, 463 F.3d at 346; *see Morgan*, 537 F. App'x at 507 (explaining that "[w]hile prescribing incorrect treatments or treatments that cause serious side effects might amount to malpractice, this allegation, without a further showing of deliberate indifference to serious medical needs, does not rise to the level of a constitutional violation").

As a result, the district court should dismiss Clark's claim against Dr. Jack for prescribing Cymbalta as frivolous and for failure to state a claim.

## C.    Clark alleges no facts showing Defendants violated his Eighth Amendment rights in regard to injuries he attributes to a purported on-the-job injury.

Clark alleges that he began suffering from back problems and pain after an on-the-job accident on June 5, 2015, in Fort Worth, Texas. Compl., at 4. He contends that while in outpatient sex offender treatment in Fort Worth, his outpatient case manager, Defendant Suzan Rivas, refused his request for keeping an appointment at John Peter Smith Hospital with an orthopedic surgeon on June 22, 2015, and instead directed him to obtain medical treatment through the Veterans Administration (VA). *Id.* at 4–5. Clark also alleges that Suzan Rivas "refused to honor [his] attorney's request for [him to attend an appointment at] the DFW Injury Clinic." *Id.* at 5. Despite Defendant Rivas's instructions that Clark obtain treatment through the VA, Clark complains that

on September 4, 2015, Defendant Tiffany Maybanks did not allow him to receive medical treatment through the VA, and since his arrival to the TCCC on September 18, 2015, Defendants Dr. Dehiena, Dr. Chapman, Dr. Jack, and Ms. Greenwald have likewise prevented him from obtaining any medical care from the VA clinic in Lubbock, Texas. Questionnaire, at 7. Instead, Clark alleges that Defendants have required him to receive medical care through the TCCC. *Id.* at 7–8.

Clark additionally claims that in December 2015, Dr. Dehiena prescribed pain medication for his back problems, and ordered x-rays to evaluate his complaints of back pain, but that she refused to obtain an MRI as Clark requested. *Id.* at 8. Clark also believes Dr. Dehiena should have referred him for back surgery with an orthopedic doctor. *Id.* at 8–9. Finally, Clark alleges that Defendant Marsha McLane violated his constitutional rights in October and December 2015, as well as June 2016, by refusing or failing "to provide and allow [him] provisions to get the prescribed surgery [which] continues [his] pain and hinders the quality of life for himself." *Id.* at 10–11. For the reasons set forth below, all of Clark's claims for deliberate indifference to medical care against the foregoing Defendants should be dismissed.

### 1. *Clark's claims of deliberate indifference against Defendants Suzan Rivas and Tiffany Maybanks are barred by the statute of limitations.*

Clark asserts that Defendants Suzan Rivas and Tiffany Maybanks violated his constitutional rights in June 2015 (*see* Compl., at 4) and on September 4, 2015, respectively. Questionnaire, at 10. Clark filed this suit on September 27, 2017.

The statute of limitations on a § 1983 claim is two years. *Morrill v. City of Denton*, 693 F. App'x 304, 305–06 (5th Cir. 2017) (noting the statute of limitations for a § 1983 action in Texas is two years from the date the cause of action accrues); *Price v. City of San Antonio*, 431 F.3d 890, 892 (5th Cir. 2005) (holding Texas's statute of limitations period for torts "requires a claim to be

brought no later than the same calendar day two years following the accrual of the cause of action"). Generally, a claim for deliberate indifference to medical care accrues on the date of the alleged incident. *Morrill*, 693 F. App'x at 306; *see also Nottingham v. Richardson*, 499 F. App'x 368, 375 (5th Cir. 2012) (quoting *Russell v. Bd. of Trs. of Firemen, Policemen & Fire Alarm Operators' Pension Fund of Dall.*, 968 F.2d 489, 493 (5th Cir. 1992)) ("Under federal law, a claim accrues when 'the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.'"); *Denby v. Norwood*, Civil No. 7:13-CV-140-O-KA, 2016 WL 2937470, at *3 (N.D. Tex. Apr. 26, 2016) (citing *Devbow v. Kalu*, 705 F.3d 765, 766 (7th Cir. 2013)) ("A § 1983 claim to redress a medical injury arising from deliberate indifference to a prisoner's serious medical needs accrues when the plaintiff knows of his physical injury and its cause.").

Even if Clark alleged a cognizable § 1983 claim based on Defendants Rivas's or Maybanks's alleged deliberately indifferent conduct, the statute of limitations bars any such claim. *See Morrill*, 693 F. App'x at 304; *Price*, 431 F.3d at 892. Clark contends Rivas and Maybanks violated his rights in June 2015 and on September 4, 2015; however, he did not file suit until September 27, 2017[7]—more than two years after the alleged violations.[8] Thus, Clark's claims are barred by the statute of limitations, and his claims against Suzan Rivas and Tiffany Maybanks

---

[7] Although the Clerk docketed Clark's Complaint on September 29, 2017, it appears Clark signed and placed his Complaint in the TCCC mail system on September 27. *See* Compl., at 8. By virtue of the mailbox rule, the court assumes September 27 as the filing date of the Complaint. *See Brown v. Taylor*, 829 F.3d 365, 368–69 (5th Cir. 2016) (applying prisoner mailbox rule to civilly committed SVP because he "was functionally a prisoner for the purpose of the mailbox rule"). Regardless, Clark filed his Complaint more than two years after his claims accrued.

[8] Clark also cannot demonstrate that he is entitled to equitable tolling of the limitations period because of a "legal disability." *See* Tex. Civ. Prac. & Rem. Code Ann § 16.001(a) (West 2018) ("[A] person is under a legal disability if the person is: (1) younger than 18 years of age, regardless of whether the person is married; or (2) of unsound mind."). In addition, Clark's civil commitment likely does not provide a basis to toll the statute of limitations. *See Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998) ("[U]nder Texas law imprisonment does not toll limitations."); *see also Bohannan*, 527 F. App'x at 293–94 (discussing the statute of limitations as applied to an SVP, and noting that Texas does not toll prisoners' civil suits during their incarceration).

must be dismissed. *See Jones v. Bock*, 549 U.S. 199, 215 (2007) (noting that when the allegations in the pleadings "show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim"); *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993) (explaining that a court may summarily dismiss a complaint filed *in forma pauperis* if it is "clear" that the claims asserted are barred by the statute of limitations).

### 2. *Clark has no constitutional right to attend medical appointments at locations or with physicians of his choosing.*

Clark alleges that Dr. Dehiena, Dr. Chapman, Dr. Jack, and Ms. Greenwald all prevented him from receiving medical care through the VA in Lubbock, Texas. Questionnaire, at 7. He asserts that "[a]s a free U.S. citizen who served his country and is a Veteran," Defendants should permit him to "access any form of a second opinion from any other Doctor . . . and attend an appoitment [sic] with a Doctor of his chooseing [sic] . . . ." *Id.* at 8. Clark further contends that Defendants have prevented him from attending medical appointments scheduled by his personal injury attorney, which *may* have caused his attorney to drop his case. *Id.* at 7; *see also* Compl., at 5.

As explained above, although Clark is not a prisoner, the Eighth Amendment deliberate indifference standard (typically applicable to prisoners) applies to his claim that Defendants provided constitutionally deficient medical care. *See Bohannan*, 527 F. App'x at 292. Properly framed, however, Clark's claims against Defendants simply amount to a disagreement over the type of medical treatment provided. Clark does not allege that Defendants wholly failed to provide him with any care. Instead, Clark contends that Defendants did not permit him to attend appointments at the facility and/or with the doctor of his choosing because they assert he is under "their care." Questionnaire, at 7–11; *see also* Compl., at 5–7. Clark concedes that he has received medical care at TCCC; however, he simply desires other treatment and/or examination by different

doctors. *See, e.g.,* Questionnaire, at 7 ("I am not given any other options for medical care/provisions besides what is available here at the TCCC medical clinic."); 8 (acknowledging "Dr. Dehiena gave me X-rays . . . and prescribed pain medicine for my symptoms," but alleging that "[s]he refused/failed to get an MRI for me *as I was requesting*" (emphasis added)); Compl., at 7 (stating that a neurologist examined him and administered an MRI, but complaining that the doctor told him "the bone was healed and that [he] could not have an opportunity to seek a second opinion"). "By its very nature, [civil commitment] deprives a [plaintiff] of the wide choice of health care providers available and may well interfere with a [plaintiff's] preferred mode of treatment." *Delaughter v. Woodall*, Civil Action No.1:14cv18-JCG, 2016 WL 1090606, at *4 (S.D. Miss. Mar. 18, 2016) (citing *United States v. DeCologero*, 821 F.2d 39, 42 (1st Cir. 1987)). Moreover, a plaintiff's "right to be free from cruel and unusual punishment does not include the right to the treatment of one's choice . . . ." *Hack v. Cain*, Civil Action No. 3:14-00063-JWD-EWD, 2016 WL 3167176, at *18 (M.D. La. June 6, 2016) (quoting *Rathy v. Wetzel*, Civil Action No. 13–72, 2014 WL 4104946, at *7 (W.D. Pa. July 28, 2014)); *see Hunt v. Barry Telford Unit, TDCJ*, No. 5:15CV152, 2017 WL 1100721, at *3 (E.D. Tex. Mar. 24, 2017) (overruling prisoner's objections to magistrate judge's recommendation of dismissal because prisoner had not demonstrated defendants were deliberately indifferent where they allegedly "fail[ed] to consider a prisoner's self-diagnosis, fail[ed] to summon a specialist of the prisoner's choice, and fail[ed] to perform such tests and procedures as the prisoner desire[d]"); *Veal v. Kuplesky*, Civil Action No. 1:13–CV–00566, 2015 WL 10551741, at *8 (W.D. La. Dec. 30, 2015) (recommending dismissal of prisoner's claim against prison nurse because his "claims amount to being denied his choice of physicians and clinics" as opposed to a denial of adequate medical care). Clark therefore has no

constitutional right to attend medical appointments at the VA or at any other place of his choosing, and his claims against Defendants should be dismissed as frivolous.

**3.     *Clark admits, and the authenticated records confirm, that Dr. Dehiena, Marsha McLane, and other TCCC medical staff have provided him with extensive care and treatment.***

To the extent Clark alleges he has not received adequate medical care at TCCC, his claim is also without merit. *See* Compl., at 7 ("It seems like getting medical treatment is like pulling teeth . . . ."). Specifically, Clark faults Dr. Dehiena for failing to obtain an MRI of his back, as he requested, and for not recommending "surgery to correct the damage to . . . L-2 in [his] spine." Questionnaire, at 8; *see also* Compl., at 6 (alleging that "Dr. Dehiena, she only gave me a finger squeeze test and deemed me being healed . . ."). He also contends Defendant Marsha McLane refused "to provide and allow [him] provisions to get the prescribed surgery . . . ." Questionnaire, at 11. Such claims similarly constitute Clark's disagreement over the type of care provided by Dr. Dehiena and other staff at TCCC. To show deliberate indifference, Clark must allege facts that "*clearly evince* [his] medical need and the alleged official dereliction." *Johnson*, 759 F.2d at 1238 (noting that a finding of deliberate indifference requires the plaintiff show that institution medical staff refused to treat him, ignored his complaints, or intentionally disregarded his medical needs). As long as the medical professional treating the plaintiff addresses his needs, the medical professional is not deliberately indifferent. *See id.*; *Domino*, 239 F.3d at 756.

Instead of demonstrating that Defendants refused to treat him or ignored his complaints, the treatment records (and Clark's own admissions) show TCCC medical staff responded to his complaints of back pain and related issues, and evaluated him on numerous occasions. For example, on September 29, 2015, TCCC medical staff conducted an initial evaluation and prescribed pain medication and an extra mattress for Clark's complaints of back pain. As Clark

18

concedes, the records show he received an x-ray of his lumbar and sacral spine on November 5, 2015. Clark thereafter saw a doctor on October 29, 2015, who reviewed his prior medical records and recommended "pain management." The records also indicate, and Clark acknowledges, that he regularly receives pain medication—including ibuprofen and Tramadol (*see* Compl., at 6)—and TCCC medical staff routinely examine him. *See* Compl., at 6–7; Questionnaire, at 7–11. On October 3, 2016, Clark obtained an MRI on his lumbar spine and on December 27, 2016, medical personnel performed a bone density scan on his lumbar spine for "further evaluation as [indicated] by MRI." Thus, the authenticated records and Clark's allegations demonstrate that Defendants have been responsive to his requests for treatment and complaints of back pain. Although he may believe surgery is medically necessary to correct his back problem, Clark's claim that the TCCC medical staff were deliberately indifferent by prescribing pain medication instead of surgery fails because Clark merely disagrees with the type of treatment provided—such a claim does not establish deliberate indifference. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976) (explaining that "the question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment"); *Norton*, 122 F.3d at 292 (affirming district court's dismissal of prisoner's claim that defendants were deliberately indifferent to his serious medical needs where records show defendants furnished extensive medical care, medication, and medical supplies, and prisoner's claim "that medical personnel should have attempted different diagnostic measures or alternative methods of treatment" amounted to mere disagreement with the care provided). In sum, Dr. Dehiena, Marsha McLane, and the TCCC medical staff did not ignore Clark's complaints or show any kind of wanton disregard to a serious medical condition.

For these reasons, Clark has failed to state a cognizable constitutional claim for deliberate indifference to his serious medical needs. Clark's claims against Defendants should be dismissed as frivolous and for failure to state a claim.

**D.    Clark's claim against Marsha McLane should also be dismissed because the law does not impose vicarious liability under § 1983 for the actions of subordinates.**

To the extent Clark alleges Marsha McLane[9] is responsible for the actions of her subordinates, his claim must also be dismissed. A supervisory official is not liable for the acts of her subordinates unless: (1) she affirmatively participated in an act that caused a constitutional deprivation; or (2) she implemented an unconstitutional policy that resulted in injury to the plaintiff. *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992) (citing *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)). A plaintiff must sufficiently allege facts showing either personal involvement or implementation of an unconstitutional policy to make a supervisor responsible under § 1983, as prison supervisors "are not liable for the actions of their subordinates on any theory of vicarious liability." *Thompkins*, 828 F.2d at 303.

Initially, the court notes that Clark has not stated a viable constitutional claim. Without a non-frivolous allegation that his constitutional rights were violated, Clark cannot state a claim for supervisory liability. *See Mouille*, 977 F.2d at 929. Even assuming he has pleaded a viable constitutional violation, however, Clark has not alleged any facts demonstrating Marsha McLane personally participated in any alleged constitutional violation or implemented an unconstitutional policy. Although he generally claims that he spoke with her on three occasions about his condition and alleged need for surgery, Clark asserts no other facts demonstrating McLane's alleged personal

---

[9] Marsha McLane is the Executive Director of the TCCO, which is centered in Austin, Texas. *See Texas Civil Commitment Office*, Tex. State Directory, https://www.txdirectory.com/online/abc/detail.php?id=458 (last visited July 2, 2018).

20

involvement. Accordingly, Clark has failed to state a non-frivolous claim for supervisory liability against Marsha McLane, and his claim against her should be dismissed.

### IV.    Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Court dismiss Clark's Complaint with prejudice in accordance with 28 U.S.C. § 1915(e)(2)(B).

### V.    Right To Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. See 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. See Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: July 17, 2018

_____
**D. GORDON BRYANT, JR.**
**UNITED STATES MAGISTRATE JUDGE**

21